(

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
U.S.D.C. Atlanta

MAR 1 9 2008

JAMES N. HATTEN, Clerk
By. _____ Deputy Clerk

PHARMERICA, INC.,

       Plaintiff,

v.

HEALTHPRIME, INC., HANOVER
HEALTH and REHABILITATION, and
HCC–HEALTHCARE of BIRMINGHAM,
LLC,

       Defendants.

CIVIL ACTION NO.

1:07-CV-0207-JEC

## ORDER and OPINION

This case is presently before the Court on plaintiff PharMerica, Inc.'s Motion to Compel Discovery Responses and for Sanctions ("PMCS") [48], PharMerica, Inc.'s Motion for Hearing on PharMerica, Inc.'s Motion to Compel Discovery Responses and Motion for Sanctions [49], PharMerica, Inc.'s Motion for the Court to Take Judicial Notice [61], and Defendants HealthPrime, Inc. and Hanover Health and Rehabilitation's Motion for Summary Judgment [53]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Plaintiff's Motion to Compel Discovery Responses and for Sanctions [48] should be **GRANTED in part and DENIED in part;** Plaintiff's Motion for Hearing on its Motion to Compel Discovery and for Sanctions [49] should be **DENIED;** Plaintiff's

Motion for the Court to Take Judicial Notice [61] should be **GRANTED;** and Defendants' Motion for Summary Judgment [53] should be **DENIED.**

## BACKGROUND

This is a contract dispute involving plaintiff PharMerica, Inc. ("PharMerica") and defendants HealthPrime, Inc. ("HealthPrime"), Hanover Health and Rehabilitation ("Hanover Health"), and HCC-Healthcare of Birmingham, LLC ("HCC"). In 2003, plaintiff entered into a contract that is referred to as the "HealthPrime Agreement," whereby plaintiff agreed to offer certain pharmaceutical services at the Hanover Health facility, in exchange for payment from HealthPrime. (Am. Compl. [9]; HealthPrime Agreement attached to Am Compl. [9].) However, HealthPrime allegedly defaulted and, as of October 31, 2006, the arrearage due and owing on the contract totaled $299,546.94. (Am. Compl. [9] at p. 4.) Plaintiff alleges that one or all of the defendants owes plaintiff this sum; defendants do not agree as to which defendant is potentially liable.

Hanover Health, the facility that received the services under the HealthPrime Agreement, has asserted that HealthPrime is not responsible for the debt. (Am. Compl. [9] at p. 5.) Hanover Health claims that Derek Patterson, the person who entered into and signed the HealthPrime Agreement with plaintiff, had no authority to bind HealthPrime to the agreement. (*Id.*) However, the HealthPrime Agreement signatory is "HealthPrime," and Derek Patterson seemingly

2

AO 72A
(Rev.8/82)

signed on its behalf. (*See* HealthPrime Agreement, Ex. A attached to Am Compl. [9] at p. 1.) Hanover Health nevertheless claims that Derek Patterson actually worked for HCC and had no affiliation with HealthPrime. (Am. Compl. [9] at p. 5.) Hanover Health, in fact, claims that it is not a legal entity, but is a facility that is owned and operated by HCC. (*Id.*) Therefore, according to Hanover Health, HCC is responsible for the debt owed to plaintiff, not HealthPrime.

Plaintiff originally brought suit against HealthPrime and Hanover, but later, after learning of HCC's alleged role, plaintiff amended the complaint to include HCC as a defendant. (*See* Compl. [1]; Am. Compl. [9].) Plaintiff argues that defendants have failed to fully cooperate with plaintiff's discovery requests. (See PMCS [48].) Plaintiff alleges that HCC has provided deficient responses to interrogatories and requests for admission, and has failed to produce a number of documents. (*Id.* at pp. 1-2.) In addition, both Derek Patterson, the person who signed the HealthPrime Agreement, and Doug Mittleider, the owner of HealthPrime, have failed to appear for two scheduled depositions. (*Id.*) Defendants have also refused to produce the documents requested in the deposition notices. (PMCS [48] at pp. 4-5.)

Plaintiff contacted all defendants with emails and letters requesting that the discovery deficiencies be cured. (PMCS [48] at pp. 4-5; Exs. O and P attached to PMCS [48].) Defendants responded

3

by supplying small additional packages of documents, and updating their responses to the interrogatories. (*See id.*) However, plaintiff is still unsatisfied with the documents and responses provided. (*See* PMCS [48] at pp. 4-5.)

Plaintiff alleges that these failures are not a result of inadvertence, but rather evidence of bad faith. (PMCS [48] at p. 2.) Plaintiff points to another case involving plaintiff and another company owned by Doug Mittleider, in which Mr. Mittleider's company also failed to cooperate with discovery requests. (*See PharMerica, Inc. v. Direct Care Services d/b/a Buckhead Health and Rehab and HCC – Healthcare of Marietta, LLC d/b/a Shoreham at Marietta*, Case No. 1:05-CV-3105-BBM, attached to Motion to Take Judicial Notice [61].) In that case, Judge Beverly Martin granted plaintiff's Motion to Compel and ordered defendant to comply with plaintiff's discovery requests. (*PharMerica, Inc. v. Direct Care Services d/b/a Buckhead Health and Rehab and HCC – Healthcare of Marietta, LLC d/b/a Shoreham at Marietta*, Case No. 1:05-CV-3105-BBM, attached to Motion to Take Judicial Notice [61] at p. 11.) However, according to plaintiff, Mr. Mittleider's company settled, rather than providing the required information. (PMCS [48] at pp. 2-3.) Plaintiff argues that the discovery problems here and in the prior case are not a matter of coincidence. (*Id.*) Plaintiff claims that "Mr. Doug Mittleider has, and continues to, fraudulently avoid paying creditors... by creating

4

a labyrinth of entities designed to be maddeningly hard to follow[,] in order to (a) keep his companies judgment proof[,] and (b) hide money for his own personal benefit. (*Id.*)

In response to defendants' failure to comply with discovery requests here, plaintiff brought this Motion to Compel [48], a Motion for Hearing on Plaintiff's Motion to Compel [49], and a Motion to Take Judicial Notice [61] of the prior action discussed above. In addition, Defendants HealthPrime and Hanover have filed a Motion for Summary Judgment [53]. The Court will address each of these now.

### DISCUSSION

### I.   **Motion to Take Judicial Notice**

Plaintiff claims that this is the second action in which companies controlled by Doug Mittleider have refused to cooperate with plaintiff PharMerica's discovery requests. (*See PharMerica, Inc. v. Direct Care Services d/b/a Buckhead Health and Rehab and HCC – Healthcare of Marietta, LLC d/b/a Shoreham at Marietta*, Case No. 1:05-CV-3105-BBM, attached to Motion to Take Judicial Notice [61]; PMCS [48] at p. 2.) The prior case was adjudicated in this district by Judge Martin, and it shares a number of similarities with this case. That case involved another contract dispute between this plaintiff and another defendant owned by Mr. Doug Mittleider, and, like the *instant case*, the relationship between the defendants involved in that case was unclear. (*PharMerica, Inc. v. Direct Care*

5

*Services d/b/a Buckhead Health and Rehab and HCC - Healthcare of Marietta, LLC d/b/a Shoreham at Marietta*, Case No. 1:05-CV-3105-BBM, attached to Motion to Take Judicial Notice [61] at p. 1.)   In that case, Judge Martin noted that the defendant was not cooperating with plaintiff PharMerica's discovery requests, and she compelled complete and appropriate responses.   *Id.*   However, according to plaintiff, defendant settled, rather than providing the required information. (*See* PMCS [48] at pp. 2-3.)

The prior case not only serves as notice to the Court of Mr. Mittleider's company's prior conduct, it also served as notice to him of the types of documents and information that are required in lawsuits.   Therefore, any failure to proffer those documents and information in this case is inexcusable.   The Court is therefore unsympathetic to defendants' refusal to produce documents or fully comply with discovery requests here.   In short, the Court **GRANTS** plaintiff's motion for judicial notice of the prior litigation.

## II.   **Motion for Hearing on Motion to Compel**

Plaintiff also filed a motion seeking a hearing on its Motion to Compel.   (Plaintiff's Motion for Hearing on its Motion to Compel Discovery and for Sanctions [49].)   However, the Court has sufficient information to make its determination with regard to that motion, and a hearing will be unnecessary.   Plaintiff's Motion for a Hearing on its Motion to Compel Discovery and for Sanctions [49] is therefore

6

**DENIED.**

## III. <u>Plaintiff's Motion to Compel and for Sanctions</u>

In its Motion to Compel [48], plaintiff asks this Court to: (1) compel defendants to immediately produce all previously requested documents; (2) compel HCC to respond to interrogatories and requests for admission; (3) compel Mr. Doug Mittleider to appear for oral examination and to bring with him the documents requested in the notice; (4) compel Mr. Derek Patterson to appear for oral examination and to bring with him the documents requested in the notice; (5) order defendants to reimburse the attorneys' fees and expenses PharMerica has incurred in connection with filing this motion (and any related filings and proceedings), and (6) award sanctions against defendants for their bad faith conduct.  (PMCS [48] at pp. 2-3.)

Defendants respond by noting that plaintiff here has failed to comply with Local Rule 37.1 in its motion, which requires the plaintiff to cite the discovery requests verbatim and include the objections to the responses provided.  (Defendants' Response to PharMerica, Inc.'s Motion to Compel Discovery Responses and for Sanctions ("Defs.' Resp. to PMCS") [45] at p. 2.)  Defendants are correct.  Plaintiff's motion does not meet the standard set out in Local Rule 37.1.  Plaintiff's allegations that defendants' responses are "deficient" would not normally provide enough guidance for the opposing party to correct any alleged deficiencies.  (*See id.*)  Here,

7

however, the deficiencies in defendants' responses are obvious. Defendants here have clearly and blatantly failed to meet their discovery obligations.  Although plaintiff's failure to quote the requests verbatim and state the specific objections to each response, in accord with Local Rule 37.1, has created additional work, the Court will nevertheless proceed to the merits of the motion.

### A.    Legal Standard Governing Motions to Compel

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party....  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1).  As illustrated by this language, Congress has created liberal discovery rules and has tried to ensure both parties' ability to obtain the information needed to resolve their dispute. See id.

However, if one party does not comply with discovery requests, the opposing party may seek a motion to compel discovery responses. FED. R. CIV. P. 37(a)(1).  The movant must include in its motion a certification that it made a good faith effort to confer with the non-complying party before filing the motion.  Id.  If the Court

8

finds that one or both parties did falter in their discovery obligations, it has discretion, under Rule 37(a), to compel appropriate discovery responses. FED. R. CIV. P. 37(a)(1); *see Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984); *Joyner v. Rex Corp.*, slip copy 2007 WL 1099106, *1 (M.D. Fla. April 10, 2007)(stating that "[m]otions to compel discovery under Rule 37(a) are committed to the sound discretion of the trial court.") In addition, the party opposing a properly filed motion to compel may be required to pay the costs associated with filing that motion. FED. R. CIV. P. 37(a)(4)(B). The trial court also has the power to sanction any party that does not comply with its orders. FED. R. CIV. P. 37(b).

**B.   Motion to Compel Defendants to Produce Requested Documents**

Plaintiff first requests that this Court "(1) compel defendants to immediately produce all previously requested documents." (PMCS [48] at pp. 1-2.) Plaintiff argues that defendant HCC "either objected or did not respond sufficiently to, Request for Production Nos. 1, 2, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 18." (PMCS [48] at p. 5.) In addition, it seems that defendants have not generally been forthcoming or complied with the liberal spirit associated with discovery under Rule 26. *See* FED. R. CIV. P. 26. The Court will now address each of the responses to plaintiff's requests for production that are alleged to be deficient.

9

### 1.   **Request for Production Nos. 1 and 2**

In its first request, plaintiff seeks HCC's "audited and unaudited financial statements from 2002 to date." (Pl.'s Req. for Prod., Ex. E attached to [48] at 4-5.)  In its second request, plaintiff asks for HCC's tax returns from 2002 to date. (*Id.*)  HCC argues that both of these requests are overbroad, burdensome, and not calculated to lead to the discovery of admissible evidence. (HCC's Resp. to Pl.'s Prod. Req., Ex. J attached to [48] at pp. 4-5.)  HCC's proffered excuses for not producing these documents are clearly unacceptable.   These are standard discovery requests that are relevant and legitimately sought.  In addition, "the party resisting production bears the responsibility of establishing undue burden." *Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 686 (M.D. Ala. 1998).  **HCC** has made no attempt to make such a showing here and **is** therefore **ordered to produce the documents sought in Request for Production Nos. 1 and 2.**

### 2.   **Request for Production No. 6**

This requests states, "[p]lease produce copies of all contracts or agreements between and amongst you and Grace Healthcare." (Pl.'s Req. for Prod., Ex. E attached to [48] at 10.)  HCC's response mimics the responses above, claiming that Request for Production No. 6 is unduly burdensome and not likely to lead to the discovery of

10

admissible evidence.   (HCC's Resp. to Pl.'s Prod. Req., Ex. J attached to [48] at pp. 6-7.)   However, defendant does not support these assertions and the Court finds defendant's response unpersuasive. **HCC is** hereby **ordered to produce any and all documents that are responsive to Request No. 6.**

### 3.   Request for Production No. 7

Plaintiff requested: "Please produce all documents which set forth the relationship between you and Grace Healthcare." (Pl.'s Req. for Prod., Ex. E attached to [48] at p. 10.)   Defendant adopts the same objections that it provided in response to Request No. 6. (HCC's Resp. to Pl.'s Prod. Req., Ex. J attached to [48] at pp. 6-7.) There is no basis for such an objection here, and **HCC is** hereby **ordered to provide all documents called for by Request for Production No. 7.**

### 4.   Request for Production No. 8

It seems that HCC has supplemented its original response to Request for Production No. 8 with documents that it produced contemporaneously with its updated responses.   (*See* HCC's Updated Resp. to Pl.'s Prod. Req., Ex. M attached to [48] at p. 10.)   The Court will take HCC at its word and Plaintiff's Motion to Compel [48] with regard to Request for Production No. 8 is hereby **DENIED** without prejudice.

11

5.   **Request for Production No. 9**

Plaintiff requested: "Please produce all other correspondence concerning PharMerica, including, but not limited to internal or inter-office email or memoranda."   (Pl.'s Req. for Prod., Ex. E attached [48] at 10.)   Defendant responds by referencing its response to No. 3: "HCC ... objects to this request because it does not make sense as correspondence would not be 'internal' or 'inter-office' if it was between HCC ... and PharMerica.   Subject to that objection and without waiving the same, HCC ... has not had any correspondence as it was not a party to the contract at issue."   (HCC's Resp. to Prod. Req., Ex. J attached to [4] at p. 5.)   This answer is unsatisfactory because it is not responsive to the question.   An email or communication could concern PharMerica or mention PharMerica without being addressed to, or received from, PharMerica.   In addition, inter-office communication could refer to two offices of different companies.   Therefore, contrary to defendant's assertions, it could possibly have correspondence in its possession that concerns plaintiff.   The objection is therefore unpersuasive and this Court **GRANTS** plaintiff's Motion to Compel with regard to Production Request No. 9.

6.   **Request for Production No. 10**

Request for Production No. 10 states "[p]lease produce all documents concerning your policy for the retention and destruction of

12

documents." (Pl.'s Req. for Prod., Ex. E attached to [48] at p. 10.) HCC contends that these have been produced contemporaneously with its Updated Responses. (HCC's Resp. to Pl.'s Prod. Req., Ex. J attached to [48] at p. 8.) The Court will take HCC at its word, and the Motion to Compel with regard to Request for Production No. 10 is **DENIED** without prejudice.

### 7.  <u>Request for Production No. 11</u>

Request for Production No. 11 asks HCC to produce "copies of all invoices or bills sent to [HCC] by PharMerica." (Pl.'s Req. for Prod., ex. E attached to [48] at p. 10.) HCC responds by objecting to the request, stating that it is burdensome, overbroad, and not calculated to lead to admissible evidence. (HCC's Resp. to Pl.'s Prod. Req., Ex. J attached to [48] at p. 8.) HCC also argues that these documents are as available to plaintiff as they are to HCC. (*Id.*) Lastly, HCC contends that it is still compiling information and will supplement its response to Request No. 11 as the information becomes available. (*Id.*)

Contrary to HCC's contentions, these documents are relevant to show that plaintiff has attempted to collect from HCC, and they are relevant to show that HCC received the invoices. In addition, the documents will most likely be admissible under the business document exception to the hearsay rule. Furthermore, defendant has not even attempted to show that production of these documents will result in

13

a burden to HCC.   Although HCC stated that it would supplement its response to Request No. 11, HCC's update mentions no supplementation for this request.   (HCC's Updated Resp. to Pl.'s Prod. Req., Ex. N attached to [48] at p. 5.)   The Court will assume that these documents have not been furnished.   Therefore, **HCC is** hereby **ordered to fully respond to plaintiff's Request for Production No. 11.**

### 8.   Request for Production No. 12

HCC contends that it produced the documents requested in Request for Production No. 12 "contemporaneously with HealthPrime and Hanover's Updated Responses to Plaintiff's Requests for Production of Documents."   (HCC's Updated Resp. to Pl.'s Prod. Req., Ex. N attached to [48] at p. 5.)   Assuming this is true, plaintiff's request is **DENIED** without prejudice with regard to Request for Production No. 12.

### 9.   Request for Production No. 13

In Request for Production No. 13, plaintiff asks HCC to produce "any and all contracts of employment for Derek Patterson."   (Pl.'s Req. for Prod., Ex. E attached to [48] at p. 10.)   HCC objects, stating that the request is overbroad, burdensome, and not calculated to lead to admissible evidence.   (HCC's Resp. to Pl.'s Prod. Req., Ex. J attached to [48] at p. 9.)   The objection is ridiculous.   **HCC is hereby ordered to produce these documents.**

14

10.  **Request for Production No. 14**

Plaintiff requested: "Please produce copies of any and all documents identifying how Hanover, HealthPrime and HCC does business (i.e. as a corporation, as a partnership, other)." (Pl.'s Req. for Prod., ex. E attached to [48] at p. 11.)  HCC responds that there are no such documents for Hanover because it does not do business. (HCC's Resp. to Pl.'s Prod. Req., ex. J attached to [48] at p. 9.) Notwithstanding its objections, HCC claims that the relevant documents are being produced. (*Id.*)  Therefore, to the extent **HCC** has failed to produce these documents, it **is** hereby **ordered to comply fully with Request for Production No. 14 immediately**.

11.  **Request for Production Nos. 15 and 18**

Plaintiff requested: "Please produce copies of any and all documents that identify whom has control or authority over Hanover, HealthPrime, and HCC." (Pl.'s Req. for Prod., ex. E attached to [48] at p. 11.)  Rather than answering the question, HCC incorporates its response to plaintiff's Request for Production No. 14. (HCC's Resp. to Pl.'s Prod. Req., ex. J attached to [48] at p. 10.)  As the response was insufficient with regard to Request No. 14, it is insufficient for Request No. 15.  Plaintiff's Motion to Compel [48] with regard to Request for Production No. 15 is therefore **GRANTED**, and HCC is ordered to produce these documents.  In addition, HCC

15

incorporated the same response into its response to Request for Production No. 18. (HCC's Resp. to Pl.'s Prod. Req., Ex. J attached to [48] at p. 11.) This is unacceptable. HCC is also ordered to produce all documents that are responsive to plaintiff's Request for Production No. 18.

**B.  Motion to Compel HCC to Fully Respond to Interrogatories and Requests for Admission**

Plaintiff also contends that HCC offered a number of deficient responses to both plaintiff's Interrogatory Requests and to plaintiff's Requests for Admissions. (PMCS [48] at p. 5.) The allegedly deficient answers include the responses to Interrogatory Nos. 2, 4, and 16, and Request for Admission Answers 4, 6, and 19. (PMCS [48] at p. 5.) The Court addresses these now.

**1.  Interrogatory No. 2**

Interrogatory No. 2 requests that defendant "[s]et forth in detail the relationship between and amongst HealthPrime, Hanover, and HCC." (First Set of Interrogatories and Requests for Admission of Plaintiff, PharMerica, Inc. to Defendant HCC-Healthcare of Birmingham, LLC ("Pl.'s Interrogs. and Req. for Admis. to HCC"), Ex. F attached to [48] at p. 9; HCC-Healthcare of Birmingham, LLC's Responses to First Set of Interrogatories and First Requests for Admission of Plaintiff, Pharmerica, Inc. to HCC-Healthcare of Birmingham, LLC ("HCC's Resp. to Interrogs. and Req. for Admis. to

16

HCC"), Ex. I attached to [48] at 6-7.)   HCC objected on the grounds
that the request was overbroad, burdensome, and not related to the
discovery of admissible evidence.   (HCC's Resp. to Interrogs. and
Req. for Admis., Ex. I attached to [48] at pp. 6-7.)   However, HCC
updated this answer stating that there is no relationship between the
three.   (HCC's Updated Resp. to Interrogs. and Req. for Admis., Ex.
M attached to [48] at 5.)

Neither the Court nor plaintiff is satisfied with this
conclusory response.   The three entities clearly have some sort of
relationship, and HCC has alluded to this fact in earlier documents.[1]
HCC is hereby ORDERED to address and answer Interrogatory No. 2 in
its entirety.

### 2.   Interrogatory No. 4

Interrogatory No. 4 asks HCC to "state each entity that employed
Derek Patterson during the last five (5) years and include the title
and business location for each place of employment."   (Pl.'s
Interrogs. and Req. for Admis. to HCC, Ex. F attached to [48] at p.

---

[1] For example, HCC states in its Response to plaintiff's Request
for Production No. 14 that Hanover is owned and operated by HCC.
(HCC's Resp. to Pl.'s Prod. Req., Ex. J attached to [48] at p. 9.)
This is a relationship that HCC has not mentioned in its Response to
Interrogatory 2.   In addition, Derek Patterson, who claims to be
employed by HCC, apparently signed a contract that referred to
HealthPrime as the signatory.   (See HealthPrime Agreement, attached
to Am. Compl. [9] at p. 1.)   Plaintiff asks that defendant clarify
these issues.   The Court agrees that this information is relevant and
necessary to settle the dispute.

AO 72A
(Rev.8/82)

9.) HCC responds that "Mr. Patterson has been employed at Hanover Health and Rehab for the previous five years." (HCC's Resp. to Interrogs. and Req. for Admis., Exh. I attached to [48] at p. 7.) In addition, it appears that HCC supplemented this answer in its Updated Responses. (HCC Healthcare of Birmingham, LLC's Updated Responses to First Set of Interrogatories and First Requests for Admission of Plaintiff Pharmerica, Inc. to HCC Healthcare of Birmingham, LLC ("HCC's Updated Resp. to Interrogs. and Req. for Admis."), Ex. M attached to [48] at 5.) It appears that HCC has provided a complete response. Therefore, plaintiff's request to compel is **DENIED** without prejudice with regard to Interrogatory No. 4.

### 3. Interrogatory No. 16

Interrogatory No. 16 aks HCC to "[i]dentify each and every banking institution where HCC maintains a bank account, including all payroll accounts, operating accounts and patients' trust accounts." (Pl.'s Interrogs. and Req. for Admis. to HCC, Ex. F attached to [48] at p. 12.) Defendant claims that this request is too burdensome and overbroad, and will not lead to admissible evidence. (HCC's Resp. to Interrogs. and Req. for Admis., Exh. I attached to [48] at p. 14.) Defendant's refusal to provide bank account information and financial statements, which are standard discovery requests, reveals defendant's bad faith. In addition, if the company can keep track of the bank accounts for business purposes, it can certainly list them

18

for plaintiff without being unduly burdened.  There is no excuse for failing to respond to this request.  **HCC is hereby ordered to fully respond to Interrogatory No. 16.**

### 4.  Admission No. 2

Plaintiff asks HCC to admit or deny that "HCC is responsible to pay PharMerica for all services rendered and/or goods supplied under the HealthPrime Agreement."  ( Pl.'s Interrogs. and Req. for Admis. to HCC, Ex. F attached to [48] at p. 12.)  HCC responds by stating that the lawsuit had just been commenced, and that HCC did not have enough information to admit or deny the allegation at that time. (HCC's Resp. to Interrogs. and Req. for Admis., Ex. I attached to [48] at p. 15.)  **HCC,** however, has had sufficient time to provide an answer and is therefore **compelled to answer Request for Admission No. 2 immediately**.

### 5.  Admission No. 4

Request for Admission No. 4 asks HCC to "admit that there remains due and owing from HCC to PharMerica an unpaid balance of approximately $299,546.94 for services rendered and/or goods supplied under the HealthPrime Agreement."  (Pl.'s Interrogs. and Req. for Admis. to HCC, Ex. F attached to [48] at p. 12.)  HCC responds by stating that the lawsuit is new and that HCC did not have enough information at that time to deny or admit this request.  (HCC's Resp.

19

to Interrogs. and Req. for Admis., Ex. I attached to [48] at p. 15.) The Court believes that HCC has had sufficient time to answer this request, and it did not do so in its updated responses. (*See* HCC's Updated Resp. to Pl.'s Interrogs. and Req. for Admis., Ex. M attached to [48].) **Therefore, this Court hereby orders HCC to respond to this inquiry**.

### 6.   Admission Nos. 6 and 19

In its updated responses, HCC denied the statements provided in both Admission No. 6 and No. 19.   (HCC's Updated Resp. to Pl.'s Interrogs. and Req. for Admis., Ex. M attached to [48] at pp. 16, 18.) Therefore, Plaintiff's Motion to Compel with regard to Admission No. 6 and No. 19 is **DENIED** without prejudice.

### C.   Motion to Compel Deponents to Appear and Produce Documents

Plaintiff also asks this Court to compel both Doug Mittleider and Derek Patterson to appear for oral examination and to bring with them the documents requested in the corresponding notice. (PMCS [48] at pp. 2, 5-7.)   Plaintiff explains that it submitted notices to take depositions of both Mr. Derek Patterson and Mr. Doug Mittleider, and both depositions were set to occur on June 25, 2007. (PMCS [48] at p. 5; Attachments to Cohen Affidavit ("Cohen Attachments"), Exhibits A and B.)   In addition, plaintiff requested that the deponents bring a number of documents to the depositions.   (*Id.*)   Although plaintiff

20

seeks to depose both Mr. Mittleider and Mr. Patterson, plaintiff requests the employment documentation only for Mr. Patterson in the deposition notices.  (Notice to Take Dep., Exs. A, B attached to [48].)  Plaintiff requested (1) copies of all Mr. Patterson's employment records for the past three years; (2) copies of all Mr. Patterson's pay stubs (or documents evidencing payment) from the past three years; and (3) any and all documents identifying the title and position Mr. Patterson held in the employment during the past three years.  (Notice to Take Dep., Exs. A, B attached to [48].)

Three days before the scheduled depositions, defense counsel advised plaintiff that he "w[ould] not guarantee that [the] requested documents will be available on the deposition date."  (PMCS [48] at p. 6.)  In addition, defense counsel stated that he was having problems communicating with his client and would "not guarantee their availability."  (*Id.*)  Rather than proceed with only a hope of the deponents attending with the required materials, plaintiff cancelled the depositions.  (PMCS [48] at p. 6.)

Both depositions were rescheduled for August 2, 2007, but defendants again refused to produce both the witnesses and the documents for these depositions.  (Def.s' Resp. to PMCS [45] at p. 4.)  Defendants claimed that they were not given the required thirty days notice to gather the requested documents.  (*Id.*)  The Court is not persuaded by defendants' excuse.  Defendants already had notice

21

of the documents that plaintiff was going to request because they were requested in the original deposition notices sent out in May. (PMCS [48] at p. 6.) The second deposition was not scheduled until August 2, 2007. Therefore, defendants had approximately three months to gather the materials, and they still failed to do so. This is unacceptable.

Defendants also provide other reasons that the deponents have not yet complied. (*See* Defs.' Resp. to PMCS [45] at p. 4.) Defendants state that Mr. Mittleider informed his counsel that he did not have any of the requested documents because they would all be related to Mr. Patterson's employment at Hanover Health, and these would be in Birmingham and not at Mr. Mittleider's Alpharetta office. (Def.'s Resp. to PMCS [45] at p. 4.)

First, even if defendant and Mr. Mittleider do not have access to the requested documents, this does not excuse the refusal to attend the deposition. With regard to the requested materials, it is unclear to the Court why Mr. Mittleider or HealthPrime would have access to Mr. Patterson's employment documentation. However, if Mr. Mittleider owns, or has any connection to Hanover Health or HCC, and has access to this documentation, he is required to produce it. The fact that the documents are outside of Georgia does not excuse Mr. Mittleider from producing them. *See Bennett v. CSX Transportation, Inc.*, 2006 WL 5249702, *10 (N.D. Ga. 2006)(stating "[t]he fact that

22

defendant's ... reports are not kept in a single central location does not establish the kind of undue burden that would excuse defendant from responding....") (*See* Notice to Take Dep., Ex. B attached to [48] at 1.)  However, if Mr. Mittleider and HealthPrime do not have access to these documents, they are excused from proffering them at Mr. Mittleider's deposition. **Defendant is therefore ordered to produce Mr. Mittleider for deposition, and to produce all of the requested documents that it has access to, regardless of where they are**.

Defendant also provides an excuse for Mr. Patterson's failure to appear.  According to defendant, Mr. Patterson informed counsel that Home Quality Management of Florida now operates the facility that employed him.  Therefore, he did not work for any defendant and would not produce any documents and a subpoena would be required for him to appear.  (Def.'s Resp. to PMCS [45] at p. 5.)  If Mr. Patterson is not an employee or agent of any of the defendants, this Court has no power to direct defendant to produce him for a deposition.  FED. R. CIV. P. 26, 30, and 45; 35A C.J.S. Federal Civil Procedure § 629 (Feb. 2008).  However, plaintiff could still depose him by serving him with a subpoena, as he requests.  *Id.* at 45.

As to Mr. Patterson's employment status, it is unclear whether Mr. Patterson was or is a managing agent for any of the defendants here.  It would seem that if he had the ability to sign contracts and

23

bind HealthPrime or HCC to those contracts, then he was some sort of agent.   (*See* HealthPrime Agreement, attached to Am. Compl. [9].) However, HealthPrime and Hanover claim that he was not their managing agent, and he claims that he is no longer employed, if he ever was, by any defendant.   (Am. Compl. [9] at p. 5.)

Because Mr. Patterson's current and previous position and status with defendants is not clear, the Court will require plaintiff to issue a subpoena for the deposition of Mr. Patterson and for the production of the documents in his possession.   However, **this Court orders HCC to produce the documents requested in the deposition notice that HCC has related to Mr. Patterson, including his employment records and employment contract with HCC.**   In addition, Mr. Patterson and defendants should be aware that if it comes to light that Mr. Patterson is a managing agent of a defendant, and that they have unnecessarily caused plaintiff to expend extra resources by requiring plaintiff to serve a subpoena, this Court will not hesitate to sanction both Mr. Patterson and the defendant responsible.   *See* FED. R. CIV. P. 37.

The recalcitrance, gamesmanship, and bad faith of HealthPrime, HCC, and Hanover have caused unnecessary expense for plaintiff and unnecessary work for this Court.   Given defendants' misconduct, they shall note that this Order is not limited to the production requests specifically addressed by the Court.   In addition to the specific

24

requests, all defendants in this action are ordered to review their responses and the documents already produced and ensure that they have complied with the spirit of this Order. Defendants are responsible for ensuring that plaintiff receives all the documents and information that it has legitimately requested. Defendants have **ten days from the date of this Order** to comply. Failure to do so will be met with further sanctions.

D. **Motion for an Order to Defendant to Reimburse Fees Associated with this Motion and Issue Sanctions**

Plaintiff also asks that this Court issue sanctions against the defendants and "(5) order defendants to reimburse the attorneys' fees and expenses PharMerica, Inc. has incurred in connection with filing this motion (and any related filings and proceedings)." (PMCS [48] at p. 2.) Plaintiff has in good faith attempted to resolve these discovery disputes and requested the disputed materials more than once. (*Id.* at p. 4.) However, it appears that defendants have been less than cooperative. Plaintiff argues that sanctions are appropriate here because defendants failed to produce documents and failed to adequately respond to discovery demands. (PMCS [48] at p. 7.) According to plaintiff, defendants' actions alone suggest bad faith and dilatory tactics. (*Id.*) The Court agrees.

In light of defendants' failure to provide complete responses and defendant's overall refusal to cooperate with plaintiff's

AO 72A
(Rev.8/82)

discovery requests, this Court grants plaintiff's request for reimbursement for the costs of filing this motion and any related filings and proceedings.  (*See* FED R. CIV. P. 37.)  Defendants have been responsible for the submission of many unresponsive and perhaps misleading documents and answers.  This has placed an unacceptable burden on both plaintiff and this Court.  Further, defendants were advised in the previous action before Judge Martin that resistance to discovery requests may be met with sanctions and reimbursement. Plaintiff is therefore directed to submit its application for costs, including all the information required in this Circuit for an award of attorney's fees, **within 30 days** of this Order.  Defendant may respond or object to the amounts plaintiff claims in a response brief no later than 20 days after the application is filed.

As to sanctions, such sanctions appear appropriate, but the Court will not determine the specific sanctions to be imposed at this time.  Plaintiff may refile its motion for sanctions at the conclusion of all discovery.  Should defendants continue to be uncooperative, the Court will consider striking defendants' answers and then entering a default against them.  FED. R. CIV. P. 37(b).

## IV.  Defendants' Motion for Summary Judgment

Although defendants have shown little energy in responding to plaintiff's discovery requests, they have mustered up enough initiative to file a Motion for Summary Judgment with this Court.

26

(Defendant HealthPrime, Inc. and Hanover Health and Rehabilitation's Motion for Summary Judgment ("Def.s' Mot. for Summ. J.") [53].) Summary judgment should be granted when it is clear that there are no issues of material fact to be resolved.   FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Defendants HealthPrime and Hanover cannot meet this standard because their motion is premature.   The facts of this case are not even established, let alone undisputed.

Defendants here filed their Motion for Summary Judgment [53] with the support of HCC's answers to interrogatories, plaintiff's answers to interrogatories, and an affidavit by Mr. Mittleider.   (*See* Exs. 1 - 3, attached to Defs.' Mot. for Summ. J. [53].)   Defendants argue that summary judgment is appropriate because HealthPrime and Hanover are not proper defendants in this action.   (Def.'s Memo. in Support of Def.s' Mot. for Summ. J. [53] at pp. 2-3.)   According to HealthPrime and Hanover, it is clear that HCC is the responsible party.   (*Id.*)   However, discovery is not finished here, and plaintiff is still seeking the evidence to prove the facts of its case. Defendants cannot claim that there are no disputed material facts when it is not even clear exactly what the facts are. Other courts have held similarly.   Many district courts have consistently denied motions for summary judgment as premature when the parties have not finished discovery.   *Nationwide Mut. Ins. Co. V. Home Ins. Co.*, 90 F.

27

Supp. 2d 893, 898 (S.D. Ohio 2000)(stating "[o]bviously, if Home is entitled to discovery, as of yet unconducted, resolution of Nationwide's motion for summary judgment as to Home's claims of arbitral bias or partiality is premature."); *Casillas v. Fed. Express Corp.*, 140 F. Supp. 2d 875, 887 (W.D. Tenn. 2001)(finding that the summary judgment motion was premature because the discovery deadline had not yet passed).

In addition, plaintiff has provided evidence that contradicts defendants' assertions, thus creating a relevant dispute. (*See* HealthPrime Agreement, attached to Am. Compl. [9].) For example, HealthPrime is the signatory to the HealthPrime Agreement, which is at the center of this case. (*Id.*) The fact that HealthPrime is named as the signatory suggests that HealthPrime is responsible for the debt created by the contract. Defendants' assertions that the contract actually belongs to HCC only creates an issue of disputed fact, it does not nullify the dispute. The Court will therefore **DENY** Defendants' Motion for Summary Judgment [53] without prejudice.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion to Compel Discovery Responses and for Sanctions [48]; **DENIES** Plaintiff's Motion for Hearing on its Motion to Compel Discovery and for Sanctions [49]; **GRANTS** Plaintiff's Motion

28

for the Court to Take Judicial Notice [61]; and **DENIES without prejudice** Defendants HealthPrime and Hanover's Motion for Summary Judgment [53].

Defendants are hereby ordered to comply with both the specific directives and the spirit of this Order. Defendants must submit the required materials to plaintiff **within ten (10) days of the date of this Order.** Failure to do so will be met with further sanctions. Plaintiff shall set a date for the remaining depositions to be completed upon receipt of this discovery. Plaintiff shall advise the Court within **twenty (20) days** of receipt of the remaining discovery of that fact. Plaintiff shall endeavor to complete all remaining depositions by **May 30, 2008.** Defendants shall cooperate.

Plaintiff is directed to submit its application for costs, including all the information required in this Circuit for an award of attorney's fees, **within thirty (30) days of this Order.** Defendant may respond or object to the amounts plaintiff claims in a **response brief no later than twenty (20) days after the application is filed.**

SO ORDERED, this __/9__ day of March, 2008.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)